IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PPG INDUSTRIES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>THE VALSPAR CORPORATION and VALSPAR SOURCING, INC.,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff PPG Industries, Inc. ("**PPG**") hereby demands a jury trial and alleges the following against Defendants The Valspar Corporation ("**Valspar Corporation**") and Valspar Sourcing, Inc. (the "**Valspar Subsidiary**") (collectively, "**Defendants**"):

**PARTIES**

**1.** PPG is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business located at One PPG Place, Pittsburgh, Pennsylvania 15222.

**2.** Valspar Corporation is a corporation organized and existing under the laws of the State of Delaware with offices located at, among other places in Pennsylvania, Waterfront Corporate Park, Building III, 2000 Georgetowne Drive, Sewickley, Pennsylvania 15143.

**3.** On information and belief, the Valspar Subsidiary is organized and existing under the laws of the State of Minnesota with its principal place of business located at 1101 South Third Street, Minneapolis, Minnesota 55415.

**4.** On information and belief, the Valspar Subsidiary is a wholly-owned subsidiary of Valspar Corporation (the relevant operations of which are in Pennsylvania).

1

## THE PATENTS-IN-SUIT

5. On December 31, 2013, the United States Patent and Trademark Office ("**PTO**") issued U.S. Patent No. 8,617,663 (the "**'663 Patent**"), titled "Coating Compositions for Cans and Methods of Coating." A true and accurate copy of the '663 Patent is attached hereto as Exhibit A.

6. On September 15, 2014, the PTO issued U.S. Patent No. 8,835,012 (the "**'012 Patent**"), titled "Coating Compositions for Aluminum Beverage Cans and Methods of Coating Same." A true and accurate copy of the '012 Patent is attached hereto as Exhibit B.

7. On January 26, 2016, the PTO issued U.S. Patent No. 9,242,763 (the "**'763 Patent**"), titled "Coating Compositions for Aluminum Beverage Cans and Methods of Coating Same." A true and accurate copy of the '763 Patent is attached hereto as Exhibit C.

8. On August 16, 2016, the PTO issued U.S. Patent No. 9,415,900 (the "**'900 Patent**"), titled "Coating Compositions for Aluminum Beverage Cans and Methods of Coating Same." A true and accurate copy of the '900 Patent is attached hereto as Exhibit D.

9. On information and belief, the claims of the '663 Patent, the '012 Patent, the '763 Patent, and the '900 Patent (together, the "**Patents-in-Suit**") claim priority to U.S. Provisional Application No. 60/620,639, filed on October 20, 2004 (the "**Provisional Application**").

10. U.S. Patent Application 11/253,161, filed on October 18, 2005, which issued as U.S. Patent No. 7,592,047 (the "**'047 Patent**") on September 22, 2009, claims priority to the Provisional Application. A true and accurate copy of the '047 Patent is attached hereto as Exhibit E. U.S. Patent Application 12/505,236, filed on July 17, 2009, which issued as U.S. Patent No. 8,092,876 (the "**'876 Patent**") on January 10, 2012, claims priority to the Provisional Application. A true and accurate copy of the '876 Patent is attached hereto as Exhibit F. U.S.

Patent Application 12/505,250, filed on July 17, 2009, which issued as U.S. Patent No. 8,173,265 (the "**'265 Patent**") on May 8, 2012, claims priority to U.S. Provisional Application No. 60/620,639.

11. The Patents-in-Suit are effectively "continuations" of the '876 Patent and the '265 Patent. On information and belief, the subject matter claimed in the Patents-in-Suit is also disclosed in the '047 Patent (the "parent" to the '876 Patent and '276 Patent), which patent claims direct priority to the Provisional Application.

12. On information and belief, the Valspar Subsidiary is the owner by assignment of the Patents-in-Suit "patent family," including the Patents-in-Suit and other patents and applications claiming priority to the Provisional Application (including the '047 Patent, the '876 Patent, and the '265 Patent) (collectively, the "**Asserted Patent Family**").

13. On information and belief, after the Valspar Subsidiary acquired the Asserted Patent Family from Valspar Corporation's employees, it granted Valspar Corporation an exclusive license back to the same.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367 because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*; there is a specific remedy sought based upon the laws authorizing actions for declaratory judgment in the courts of the United States (28 U.S.C. §§ 2201 and 2202); and there is an actual case or controversy within the jurisdiction of this Court—all as detailed *infra*.

15. This Court has personal jurisdiction over Defendants pursuant to the laws of the State of Pennsylvania, including Pennsylvania's long-arm statute 42 Pa. Cons. Stat. § 5322, and the Constitution of the United States.

16. The Defendants have purposefully directed their activities at residents of this District; have had continuous and systematic contacts with residents of this District; have conducted, and are, conducting business with residents of this District, such business having an effect in this District; and the claims asserted arise out of or are related to Defendants' activities within this District, such that, under the circumstances, the assertion of personal jurisdiction over the Defendants comports with traditional notions of fair play and substantial justice. Defendants regularly conduct substantial business in this District and have voluntarily availed themselves of the laws and regulations of this District.

17. Valspar Corporation is registered to do business in the State of Pennsylvania, and maintains a registered agent for service of process in the State of Pennsylvania.

18. On information and belief, Valspar Corporation conducts regular and substantial business in the State of Pennsylvania, including at least maintaining retail store locations in the District, selling and offering for sale products through such retail locations, selling and offering for sale products through other authorized retailers located in the District, and manufacturing products for use or sale, conducting research and development, and conducting other business activities in this District—including with respect to the Patents-in-Suit specifically (as discussed *infra*).

19. Valspar Corporation has availed itself of the courts of the State of Pennsylvania. For example, Valspar Corporation has been a party to at least seventeen lawsuits within this State, bringing suit as a plaintiff in at least three of such lawsuits.

20. On information and belief, the Valspar Subsidiary acts as a holding company for intellectual property (including patents and trademarks) of or used by Valspar Corporation.

21. On information and belief, the Valspar Subsidiary conducts regular and substantial business in the State of Pennsylvania, including in this District, in that it has procured assignment of hundreds of patents from purported inventors employed by Valspar Corporation, including dozens of patents from purported inventors employed by Valspar Corporation in this District.

22. On information and belief, Defendants employ or use the same individuals to act on their behalf. For example, Mr. Andrew Ubel acts as an officer for both Defendants, serving as the "Deputy General Counsel & Chief Intellectual Property Counsel" of Valspar Corporation and the "Secretary" of the Valspar Subsidiary. Mr. Ubel has also entered an appearance on behalf of both Defendants in the Minnesota Case (discussed *infra*).

23. The Asserted Patent Family is directed to inside spray coatings for the interior of food and beverage cans.

24. On information and belief, with respect to such inside spray coatings, Defendants maintain a research-and-development laboratory at 2001 Tracy Street, Pittsburgh, Pennsylvania 15223; manufacturing facilities at 372 Cleveland Street, Rochester, Pennsylvania 15074; and sales "headquarters" at 2000 Georgetowne Drive, Sewickley, Pennsylvania 15143.

25. On information and belief, the named inventors of the subject matter claimed in the Asserted Patent Family (the "**Named Inventors**") were employed within this District when they allegedly invented such subject matter.

26. On information and belief, the Named Inventors' research activities developing the subject matter claimed by the Patents-in-Suit were performed in this District.

27. On information and belief, the Named Inventors were or were previously employed by Valspar Corporation within this District when they executed an assignment agreement to assign the Asserted Patent Family to the Valspar Subsidiary.

28. On information and belief, the agreement between the Valspar Subsidiary and the Named Inventors, assigning the Asserted Patent Family to the Valspar Subsidiary, was executed and notarized in this District.

29. On information and belief, products embodying the subject matter claimed in the Asserted Patent Family are or were manufactured in this District at 372 Cleveland Street, Rochester, Pennsylvania 15074 by or on behalf of Valspar Corporation, under the authorization and control of the Valspar Subsidiary.

30. On information and belief, products embodying the subject matter claimed in the Asserted Patent Family are marketed, offered for sale, or sold in or from this District at 2000 Georgetowne Drive, Sewickley, Pennsylvania 15143 by or on behalf of the Valspar Corporation, under the authorization and control of the Valspar Subsidiary.

31. On information and belief, Defendants market products embodying the subject matter claimed in the Asserted Patents under the trademark "Valpure." On information and belief, the Valspar Subsidiary is the owner of the trademark registration issued by the PTO on "Valpure" (Registration No. 4,796,377). Therefore, on information and belief, the Valspar Subsidiary maintains quality control over the use of the "Valpure" trademark in connection with products made, used, and/or sold by Valspar Corporation in this District.

32. On information and belief, the harm, if any, to Defendants from actions alleged to infringe the Patents-in-Suit would occur within this District (which is where Defendants' relevant operations are).

33. On information and belief, Defendants jointly agreed to enforce at least the Patents-in-Suit against PPG (a resident of this District); retained the same outside counsel; and together filed a complaint alleging infringement of the claims of the '663 Patent, '012 Patent, and '763 Patent against PPG.

34. This complaint was filed with the U.S. District Court for the District of Minnesota on May 23, 2016, in a case captioned *The Valspar Corporation, et al. v. PPG Industries, Inc.*, No. 0:16-cv-01429-SRN-SER (the "**Minnesota Case**"). Valspar alleged that PPG's INNOVEL® HPS™ (an inside spray coating for beverage cans) infringed these patents ("**INNOVEL**"). The complaint in this suit was later amended to additionally allege infringement of the claims of the '900 Patent.

35. Therefore, Defendants have both threatened and sought to enforce and defend the Patents-in-Suit against PPG (a resident of this District). As discussed *infra*, however, venue is no longer proper in the Minnesota Case due to an intervening change in law, and PPG is moving to dismiss or transfer the same to this District.

36. PPG is a Pennsylvania corporation with its principal place of business (including its inside spray coatings business) in this District. This is where allegedly infringing acts of the Patents-in-Suit by PPG take place, as well as where PPG developed, formulated and commercialized prior art inside spray coatings that anticipate or render obvious the Patents-in-Suit. *See, e.g.*, the Minnesota Case, Doc. No. 35.

37. Defendants have also, together, executed and sent to PPG in this District a patent license (the "**License**") in connection with their enforcement and defense efforts. For example, PPG received the License from Defendants in this District on or around November 15, 2016. With the License, Defendants granted PPG a non-exclusive license with respect to the subject

matter disclosed in the '047 and '876 Patents, authorizing PPG to, among other things, practice such subject matter in this District.

38. Defendants have also, together, executed and sent threats to PPG in this District in connection with their enforcement and defense efforts. For example, Mr. Ubel (acting on behalf of both Defendants) mailed a letter to Mr. Glenn E. Bost II in this District received on or around November 21, 2016 (the "**Letter**"). Mr. Bost is a Senior Vice President and General Counsel of PPG. In this Letter, Defendants stated that they planned to maintain an infringement suit against PPG.

39. On information and belief, in connection with the enforcement and defense of the Patents-in-Suit, Defendants (or their representatives) have traveled to this District or communicated with Defendants' employees in this District. For example, Valspar Corporation and the Valspar Subsidiary have, together, identified the same five party witnesses on behalf of both Defendants in the Minnesota Case. Four of these witnesses reside in this District.

40. In addition, Defendants' outside counsel in the Minnesota Case are also representing, on behalf of Defendants, one or more Named Inventors who are no longer employed by Valspar Corporation (*e.g.*, Ms. Rachael Spynda) but who still reside in this District. On information and belief, Defendants (or their representatives) have traveled to this District or otherwise communicated with such one or more Named Inventors in this District in connection with the enforcement and defense of the Patents-in-Suit.

41. Personal jurisdiction over the Defendants would also be reasonable and fair for at least the foregoing reasons, *e.g.*, Defendants have availed themselves of this District in connection with their enforcement and defense of the Patents-in-Suit; Valspar Corporation's packaging coatings business is located in this District and operates under the authorization of the

Valspar Subsidiary; the Named Inventors' relevant development activity occurred in this District; the Valspar Subsidiary acquired the Patents-in-Suit in this District; Defendants issued a license to and threatened PPG in this District; PPG formulated and commercialized prior art inside spray coatings in this District that anticipate or render obvious the Patents-in-Suit; almost all of PPG's and Defendants' witnesses reside in this District; and almost all of PPG's and Defendants' relevant activity occurred in this District.

42. Venue is proper under 28 U.S.C. § 1391 for at least the reasons set forth above, including at least because a substantial part of the acts giving rise to the claim occurred in this judicial district and because Defendants are subject to personal jurisdiction in this District.

43. While the Minnesota Case was filed before this action, venue is no longer proper in that case in the District of Minnesota due an intervening change in law. In particular, on May 22, 2017, in an issue of first impression, the U.S. Supreme Court issued its decision *TC Heartland, LLC v. Kraft Foods Group Brands LLC*, No. 16-341, thereby narrowing the scope of venue across all existing and future patent cases. Consequently, PPG has moved as of this date to dismiss or transfer the Minnesota Case to this District, due to venue no longer being proper in the District of Minnesota. The U.S. District Court for the District of Minnesota has ordered expedited briefing on this issue. *See, e.g.*, the Minnesota Case, Doc. Nos. 79-80.

## PRIOR LITIGATION INVOLVING THE ASSERTED PATENT FAMILY

44. On or around March 29, 2012, PPG requested *inter partes* reexaminations of the '047 Patent and the '876 Patent at the PTO, due to the subject matter in those patents being either obvious or not novel. This was before the filing of the Minnesota Case, and, at this time, the Patents-in-Suit had not been granted (only the '047 Patent and the '876 Patents had). These reexaminations were assigned Control Nos. 95/001,951 and 95/001,950. During these

reexaminations, the Examiner rejected the originally-issued claims of the '047 Patent and '876 Patent, as well as amendments to those claims proposed by the Valspar Subsidiary, due to their being anticipated or rendered obvious by certain prior art.

45. On or around October 21, 2013, the Valspar Subsidiary appealed these rulings to the Patent Trial and Appeal Board ("**PTAB**"). The PTAB reversed these rulings on September 28, 2015. The PTAB found that although the particular prior art before it disclosed the composition claimed in the '047 Patent and '876 Patent, such prior art did not expressly disclose that this composition had been applied to a can.

46. On or around November 23, 2015, PPG appealed the PTAB's rulings to the Court of Appeals for the Federal Circuit ("**CAFC**"). The parties submitted their briefs to the CAFC in early 2016. On or around the day this briefing process was completed, about May 23, 2016, Defendants commenced the Minnesota Case, filing their aforementioned complaint with the U.S. District Court for the District of Minnesota. As mentioned, Defendants alleged infringement of at least the Patents-in-Suit—the claimed subject matter of which, again, is disclosed in at least the '047 Patent and '876 Patent (as well as the Provisional Application).

47. Following the filing of the Minnesota Case, the CAFC heard oral arguments on the reexaminations on November 1, 2016. During these oral arguments, the Valspar Subsidiary again conceded that the compositions recited in its patents' claims were disclosed in prior art, including PPG's own prior art patent, U.S. Patent No. 5,714,539 ("**Perez**"). Oral Argument at 30:46-31:41, *PPG Industries, Inc. v. Valspar Sourcing, Inc.*, Nos. 2016-1406, 2016-1409 (Fed. Cir. Feb. 9, 2017), *available at* http://oralarguments.cafc.uscourts.gov/ default.aspx?fl=2016-1406.mp3 (hearing on Nov. 1, 2016).

48.     Later, after this concession during oral argument, Defendants unilaterally granted PPG the License, which covered all existing PPG products (including those Defendants had accused of infringement in the Minnesota Case, *i.e.*, INNOVEL), and submitted the License to the CAFC and PPG on November 15, 2016. The Valspar Subsidiary urged to the CAFC that the License mooted the Appeal; according to the Valspar Subsidiary, it removed any justiciable controversy between the parties regarding the subject matter on appeal.

49.     Around the time that Defendants submitted the License to the CAFC and PPG and urged that the License mooted the appeal, Defendants also mailed a separate letter (the Letter) to PPG's corporate offices in this District, telling PPG that the License would provide it with "no practical license rights or value" because, in Defendants' view, it should not include patents on the same subject matter. Although this Letter was dated on the same day as the Valspar Subsidiary's submission to the CAFC, the Valspar Subsidiary did not disclose the Letter to the CAFC or serve it on opposing counsel. PPG received the Letter on or around one week later.

50.     On February 9, 2017, the CAFC announced its decision in *PPG Industries, Inc. v. Valspar Sourcing, Inc.*, Case Nos. 2016-1406, 2016-1409, 2017 WL 526116 (Fed. Cir. Feb. 9, 2017) (Exhibit G), holding that PPG had standing to appeal the PTAB determinations, but that this standing had been mooted by the License to PPG on the "subject matter" of the '047 and '876 patents. The CAFC found, in particular, that the License had "absolv[ed] PPG (and its subsidiaries and customers) of any possible infringement of the *subject matter* of the patents." Slip op. at 5 (emphasis added).

51.     The subject matter claimed in the Patents-in-Suit is disclosed in the '047 Patent and the '876 Patent (as well as the Provisional Application). Moreover, the written description of the Patents-in-Suit is virtually identical to the written description of the '876 Patent. The only

differences are grammatical changes, corrections of typographical errors, and changes in cross-references to other patents or applications in the same family.

52. Despite this License, Defendants continue to threaten PPG and its customers with allegations of infringement of this *exact* same subject matter (as claimed in the Patents-in-Suit). Indeed, Defendants continue to prosecute their allegations of infringement in the Minnesota Case, continuing to allege that this subject matter is infringed by PPG through its commercialization of INNOVEL. Defendants also continue to demand unjustified payments for alleged past and ongoing infringements from PPG under the Patents-in-Suit and an injunction against PPG's alleged future infringement of the Patents-in-Suit.

53. Based on the foregoing, there exists a substantial, actual, and justiciable controversy between Defendants and PPG as to invalidity and licensure of the Patents-in-Suit, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**COUNT 1**
**DECLARATION OF LICENSE OF THE '663 PATENT**

54. PPG realleges and incorporates paragraphs 1-53 as though fully set forth herein.

55. This claim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

56. There is a real, immediate, substantial, and justiciable controversy between PPG and Defendants concerning whether PPG's products or services (including INNOVEL) are licensed to practice the '663 Patent and Defendants' right to assert the '663 Patent against such products or services is estopped or exhausted under the License.

57. This controversy is amenable to specific relief through a decree of a conclusive character.

58. Defendants granted PPG a License covering the subject matter disclosed in the '047 Patent and '876 Patent during a CAFC appeal following a PTO proceeding challenging the validity of these patents. The CAFC ruled that the License mooted PPG's appeal because it covered the subject matter of the patents. PPG asserts that the granting of the License covers the claims of the '663 Patent by legal and judicial estoppel at least because the claimed subject matter of the '663 Patent is disclosed in the specifications of both the '047 Patent and '876 Patent.

59. PPG is therefore entitled to a judicial declaration that PPG's products or services are licensed to practice the '663 Patent and Defendants' right to assert the '663 Patent against PPG's products or services is estopped or exhausted under the License.

## COUNT 2
## DECLARATION OF LICENSE OF THE '012 PATENT

60. PPG realleges and incorporates paragraphs 1-59 as though fully set forth herein.

61. This claim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

62. There is a real, immediate, substantial, and justiciable controversy between PPG and Defendants concerning whether PPG's products or services (including INNOVEL) are licensed to practice the '012 Patent and Defendants' right to assert the '012 Patent against such products or services is estopped or exhausted under the License.

63. This controversy is amenable to specific relief through a decree of a conclusive character.

64. Defendants granted PPG a License covering the subject matter disclosed in the '047 Patent and '876 Patent during a CAFC appeal following a PTO proceeding challenging the validity of these patents. The CAFC ruled that the License mooted PPG's appeal because it

covered the subject matter of the patents. PPG asserts that the granting of the License covers the claims of the '012 Patent by legal and judicial estoppel at least because the claimed subject matter of the '012 Patent is disclosed in the specifications of both the '047 Patent and '876 Patent.

65. PPG is therefore entitled to a judicial declaration that PPG's products or services (including INNOVEL) are licensed to practice the '012 Patent and Defendants' right to assert the '012 Patent against PPG's products or services is estopped or exhausted under the License.

## COUNT 3
## DECLARATION OF LICENSE OF THE '763 PATENT

66. PPG realleges and incorporates paragraphs 1-65 as though fully set forth herein.

67. This claim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

68. There is a real, immediate, substantial, and justiciable controversy between PPG and Defendants concerning whether PPG's products or services (including INNOVEL) are licensed to practice the '763 Patent and Defendants' right to assert the '763 Patent against such products or services is estopped or exhausted under the License.

69. This controversy is amenable to specific relief through a decree of a conclusive character.

70. Defendants granted PPG a License covering the subject matter disclosed in the '047 Patent and '876 Patent during a CAFC appeal following a PTO proceeding challenging the validity of these patents. The CAFC ruled that the License mooted PPG's appeal because it covered the subject matter of the patents. PPG asserts that the granting of the License covers the claims of the '763 Patent by legal and judicial estoppel at least because the claimed subject

matter of the '763 Patent is disclosed in the specifications of both the '047 Patent and '876 Patent.

71.PPG is therefore entitled to a judicial declaration that PPG's products or services (including INNOVEL) are licensed to practice the '763 Patent and Defendants' right to assert the '763 Patent against PPG's products or services is estopped or exhausted under the License.

**COUNT 4**
**DECLARATION OF LICENSE OF THE '900 PATENT**

72.PPG realleges and incorporates paragraphs 1-71 as though fully set forth herein.

73.This claim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

74.There is a real, immediate, substantial, and justiciable controversy between PPG and Defendants concerning whether PPG's products or services (including INNOVEL) are licensed to practice the '900 Patent and Defendants' right to assert the '900 Patent against such products or services is estopped or exhausted under the License.

75.This controversy is amenable to specific relief through a decree of a conclusive character.

76.Defendants granted PPG a License covering the subject matter disclosed in the '047 Patent and '876 Patent during a CAFC appeal following a PTO proceeding challenging the validity of these patents. The CAFC ruled that the License mooted PPG's appeal because it covered the subject matter of the patents. PPG asserts that the granting of the License covers the claims of the '900 Patent by legal and judicial estoppel at least because the claimed subject matter of the '900 Patent is disclosed in the specifications of both the '047 Patent and '876 Patent.

77. PPG is therefore entitled to a judicial declaration that PPG's products or services (including INNOVEL) are licensed to practice the '900 Patent and Defendants' right to assert the '900 Patent against PPG's products or services is estopped or exhausted under the License.

## COUNT 5
## DECLARATION OF INVALIDITY OF THE '663 PATENT

78. PPG realleges and incorporates paragraphs 1-77 as though fully set forth herein.

79. This claim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

80. There is a real, immediate, substantial, and justiciable controversy between PPG and Defendants concerning whether the claims of the '663 Patent are valid.

81. This controversy is amenable to specific relief through a decree of a conclusive character.

82. The '663 Patent is invalid because it fails to meet the conditions of patentability or otherwise comply with one or more of 35 U.S.C. § 100 *et seq.*, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

83. For example, Claim 28 of the '663 Patent are invalid as anticipated or obvious in view of the prior art and for at least the reasons detailed by PPG's in its invalidity contentions served on Defendants in the Minnesota Case on January 30, 2017. An exemplary claim chart from such contentions, showing why the '663 Patent is invalid in view of Perez (a PPG prior art patent), is attached as Exhibit H.

84. PPG is entitled to a judicial declaration that the '663 Patent is invalid.

## COUNT 6
## DECLARATION OF INVALIDITY OF THE '012 PATENT

85. PPG realleges and incorporates paragraphs 1-84 as though fully set forth herein.

86. This claim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

87. There is a real, immediate, substantial, and justiciable controversy between PPG and Defendants concerning whether the claims of the '012 Patent are valid.

88. This controversy is amenable to specific relief through a decree of a conclusive character.

89. The '012 Patent is invalid because it fails to meet the conditions of patentability or otherwise comply with one or more of 35 U.S.C. § 100 *et seq.*, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

90. For example, Claims 7, 21, 24, 25, 26, 29, 42, and 80 of the '012 Patent are invalid as anticipated or obvious in view of the prior art and for at least the reasons detailed by PPG's in its invalidity contentions served on Defendants in the Minnesota Case on January 30, 2017. An exemplary claim chart from such contentions, showing why the '012 Patent is invalid in view of Perez (a PPG prior art patent), is attached as <u>Exhibit I</u>.

91. PPG is entitled to a judicial declaration that the '012 Patent is invalid.

<u>**COUNT 7**</u>
**DECLARATION OF INVALIDITY OF THE '763 PATENT**

92. PPG realleges and incorporates paragraphs 1-91 as though fully set forth herein.

93. This claim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

94. There is a real, immediate, substantial, and justiciable controversy between PPG and Defendants concerning whether the claims of the '763 Patent are valid.

95. This controversy is amenable to specific relief through a decree of a conclusive character.

96. The '763 Patent is invalid because it fails to meet the conditions of patentability or otherwise comply with one or more of 35 U.S.C. § 100 *et seq.*, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

97. For example, Claims 35, 39, 40, 52, 65 and 66 of the '763 Patent are invalid as anticipated or obvious in view of the prior art and for at least the reasons detailed by PPG's in its invalidity contentions served on Defendants in the Minnesota Case on January 30, 2017. An exemplary claim chart from such contentions, showing why the '763 Patent is invalid in view of Perez (a PPG prior art patent), is attached as Exhibit J.

98. PPG is entitled to a judicial declaration that the '763 Patent is invalid.

## COUNT 8
### DECLARATION OF INVALIDITY OF THE '900 PATENT

99. PPG realleges and incorporates paragraphs 1-98 as though fully set forth herein.

100. This claim arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

101. There is a real, immediate, substantial, and justiciable controversy between PPG and Defendants concerning whether the claims of the '900 Patent are valid.

102. This controversy is amenable to specific relief through a decree of a conclusive character.

103. The '900 Patent is invalid because it fails to meet the conditions of patentability or otherwise comply with one or more of 35 U.S.C. § 100 *et seq.*, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

104. For example, Claims 1, 3, 6, 8, 10, 12, 13, 16, 17, 19, 24, 26, 27, 29, 31, 32, 34, 36, 37, 38, 39, 43, 44, 47, 50, 52, 53, 55, 57, 68, 70, 71, 73, 79 and 80 of the '900 Patent are invalid as anticipated or obvious in view of the prior art and for at least the reasons detailed by

PPG's in its invalidity contentions served on Defendants in the Minnesota Case on January 30, 2017. An exemplary claim chart from such contentions, showing why the '900 Patent is invalid in view of Perez (a PPG prior art patent), is attached as <u>Exhibit K</u>.

105. PPG is entitled to a judicial declaration that the '900 Patent is invalid.

## PRAYER FOR RELIEF

WHEREFORE, PPG respectfully requests that the Court enter judgment in favor of PPG and prays that the Court grant the following relief to PPG:

**(a)** a declaratory judgment that PPG's products and services (including INNOVEL) are licensed to practice the Patents-in-Suit and Defendants' rights to assert the Patents-in-Suit with respect to such products and services are estopped or exhausted under the License;

**(b)** a declaratory judgment that each of the Patents-in-Suit is invalid;

**(c)** a declaratory judgment that Defendants and each of its affiliates, subsidiaries, officers, employees, agents, partners, investors, successors, assigns, alter egos, attorneys, and any person in active participation with them be restrained and enjoined from asserting any claim of the Patents-in-Suit as valid and infringed by PPG or its customers;

**(d)** a declaratory judgment that the case exceptional under 35 U.S.C. § 285, and awarding PPG its attorneys' fees;

**(e)** that PPG be awarded its costs in connection with this matter; and

**(f)** awarding PPG such other and further relief as the court deems just and proper.

## JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure, PPG respectfully demands a jury trial of all issues triable to a jury in this action.

Dated: June 9, 2017

Respectfully submitted,

 /s/ Stephen A. Loney, Jr.
Stephen A. Loney, Jr. (Pa. No. 202535)
HOGAN LOVELLS US LLP
1835 Market Street
Philadelphia, PA 19103
Telephone: 267.675.4600
Facsimile: 267.675.4601

Celine Jimenez Crowson (*pro hac vice* to be submitted)
Joseph J. Raffetto (*pro hac vice* to be submitted)
Keith B. O'Doherty (*pro hac vice* to be submitted)
HOGAN LOVELLS US LLP
555 13th Street, N.W.
Washington, D.C. 20004
Telephone: 202.637.5600
Facsimile: 202.637.5910

*Counsel for Plaintiff PPG Industries, Inc.*